IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LITEPANELS, LTD. and VITEC PRODUCTION SOLUTIONS, INC., formerly known as VITEC VIDEOCOM, INC.,<br><br>      *Plaintiffs*,<br><br>      v.<br><br>FLOLIGHT, LLC,,<br><br>      *Defendant*. | Case No. 2:20-cv-00344-JRG |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court are three claim construction briefs submitted by Litepanels, Ltd. and Vitec Production Solutions, Inc. (collectively "Plaintiffs") and three claim construction briefs submitted by Flolight, LLC ("Defendant"). Plaintiffs submit an opening brief (Dkt. No. 43, filed on June 7, 2021),[1] a responsive brief (Dkt. No. 49, filed on June 22, 2021), and a reply brief (Dkt. No. 53, filed on July 6, 2021). Defendant submits an opening brief (Dkt. No. 42, filed on June 7, 2021), a responsive brief (Dkt. No. 47, filed on June 21, 2021), and a reply brief (Dkt. No. 52, filed on July 6, 2021). The Court held a hearing on the issues of claim construction and claim definiteness on July 19, 2021. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

1

**Table of Contents**

I.    BACKGROUND ................................................................................................................. 3
II.   LEGAL PRINCIPLES ...................................................................................................... 4
      A.    Claim Construction ................................................................................................ 4
      B.    Departing from the Ordinary Meaning of a Claim Term ....................................... 7
III.  AGREED CONSTRUCTIONS ........................................................................................ 8
IV.   CONSTRUCTION OF DISPUTED TERMS ................................................................... 8
      A.    "frame"................................................................................................................... 8
      B.    "frame having a front," "light elements disposed on the front of the
            frame," "portable frame having a front," and "light elements disposed on
            the front surface of the frame" ............................................................................. 11
V.    CONCLUSION ............................................................................................................... 16

## I.      BACKGROUND

Plaintiffs allege infringement of U.S. Patent No. 7,792,022 (the "'022 Patent"). The '022 Patent is entitled Stand-Mounted Light Panel for Natural Illumination in Film, Television or Video. Through a series of continuation and continuation-in-part applications, the patent lists an earliest priority claim to an application filed on September 7, 2001.

In general, the Asserted Patents are directed to technology for a lighting apparatus as can be used, e.g., in illuminating subjects for image capture by a camera.

The abstract of the '022 Patent provides as follows:

> A lighting apparatus comprises a light panel having a panel frame, and a plurality of LEDs or other light elements secured to the panel frame. A self-contained battery unit securably attaches to the outside of the panel frame. The light panel may have a dimmer switch, and may also be capable of receiving power from a source other than the self-contained battery unit. The lighting apparatus can be mounted to a camera or a stand through adapters. Diffusion lenses or color gels can be integrated with or detachable from the light panel. The lighting apparatus may conveniently be provided in the form of a kit, with one or more of a light panel, self-contained battery unit, compact stand, connecting cable(s), adapter(s), lenses or color gels, and so on, provided in a single package.

Claims 1 and 50 of the '022 Patent, the two independent claims of the patent, recite as follows (with terms in dispute emphasized):

> **1**. An apparatus for illuminating a subject for film, photography or video, the apparatus comprising:
> a *frame having a front*;
> a plurality of semiconductor *light elements disposed on the front of the frame* and configured to provide a continuous source of illumination, said semiconductor light elements having a color temperature suitable for image capture, at least one of said semiconductor light elements individually emitting light in a daylight color temperature range or a tungsten color temperature range; and
> a dimmer whereby an illumination intensity of said semiconductor light elements may be user adjusted;
> wherein said frame is adapted for being mounted to and readily disengaged from a stand.
>
> 50. An apparatus for illuminating a subject for film, photography or video, the apparatus comprising:

3

      a ***portable frame having a front*** surface;
      a plurality of semiconductor ***light elements disposed on the front surface of the frame*** and configured to provide a continuous source of illumination, said semiconductor light elements having a color temperature suitable for image capture, at least half of said semiconductor light elements individually emitting light over a daylight color spectrum or a tungsten color spectrum; and
      a dimmer whereby an illumination intensity of said semiconductor light elements may be user adjusted by modifying an electrical current to said semiconductor light elements;
    wherein said frame comprises a receptor for detachably mounting to a stationary object or surface, whereby the frame may be swiveled and/or tilted.

## II.    LEGAL PRINCIPLES

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry … begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the

patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the way one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id.* Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871)

> (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

### B.     Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis*

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

*Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### III. AGREED CONSTRUCTIONS

The parties have agreed to constructions set forth in their Joint Claim Construction Chart Pursuant to Local Patent Rule PR-4-5d (Dkt. No. 54) and in their briefs. Based on the parties' agreement, the Court hereby adopts the agreed constructions.

### IV. CONSTRUCTION OF DISPUTED TERMS

#### A. "frame"

| Disputed Term[3] | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "frame"<br><br>• '022 Patent Claims 1, 50 | A supporting structure. The underlying constructional system or structure that gives shape or strength to an item. A frame can have any shape, and may have both interior and exterior structural elements.<br><br>In one embodiment, a portion of the interior body of the frame may comprise a printed circuit board. | enclosure adapted for mounting circuit boards, electrical connectors, illuminators, diffusers, lenses and accessories for adjusting direction, quality or intensity of emitted light |

---

[3] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest-level claim in each dependency chain is listed, and (2) only asserted claims identified in the parties' Joint Claim Construction Chart Pursuant to Local Patent Rule PR-4-5d (Dkt. No. 54) are listed.

**The Parties' Positions**

Plaintiffs submit: The term "frame" is used in the '022 Patent to denote a supporting structure. This structure is described as supporting lamp elements (e.g., LEDs) and optionally including one or more circuit boards for mounting of the lamp elements. The frame is not necessarily an "enclosure," as Defendant proposes. In fact, enclosing the lamp elements would defeat the primary intended use of the claimed and described invention, which is to illuminate a subject for a camera. And there is no description in the patent of the frame enclosing anything. Dkt. No. 43 at 14–19; Dkt. No. 49 at 6–9; Dkt. No. 53 at 3–7.

In addition to the claims themselves, Plaintiffs cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '022 Patent figs.35, 47A, 47B, 50A, col.8 ll.16–24, col.18 ll.55–61, col.24 ll.20–38. **Extrinsic evidence**: Wood Decl.[4] ¶¶ 4–12, 25–26 (Plaintiffs' Ex. B, Dkt. No. 43-2).

Defendant submits: The "frame" of the invention is well-described in the '022 Patent and is a simple term that does not need an expansive construction. Notably, the patent teaches that a circuit board "is a separate structure from the frame." Plaintiffs' proposed construction generally "does nothing to further the construction of this otherwise plain term." Further, it improperly indicates that a circuit board may be part of the frame. Dkt. No. 42 at 20–26; Dkt. No. 47 at 5–6; Dkt. No. 52 at 4–6.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '022 Patent figs.1, 5, 11, 15A–15C, col.8 ll.4–49, col.10 ll.28–34, col.11 ll.9–34, col.21 ll.53–64, col.24 ll.20–38.

---

[4] Declaration of Mike Wood in Support of Plaintiffs' Proposed Construction of Claim Terms and Elements (May 10, 2021).

**Analysis**

There appear to be two issues in dispute. First, whether the frame is necessarily an "enclosure." It is not. Second, whether the frame is necessarily distinct from any circuit board. It is not. At the hearing, the parties agreed to the Court's construction below.

"Frame" in the '022 Patent does not necessarily denote an "enclosure." Rather, the various frames described in the patent are support structures to which other structure, such as light elements, may be attached. For example, Figure 11, reproduced here, depicts lamps 1112 mounted on a frame 1101 without any suggestion of an enclosure. '022 Patent col.21 ll.53–64. Similarly, Figure 38B, reproduced here, depicts LEDs 3805 attached to one side of a frame 3802 and heat-dissipating fins 3812 attached to the other side (the "back" side) of the frame. *Id.* at col.29 ll.24–48. Again, there is no suggestion that the frame is designed to enclose anything. Ultimately, Defendant's proposed "enclosure" threatens to exclude embodiments.



The Court also rejects Defendant's suggestion that a circuit board may not be part of the frame. Notably, Claim 48 recites the opposite: "The apparatus of claim 45, wherein **said frame comprises**

*a printed circuit board*, and wherein said high output LEDs are disposed on said printed circuit board." *Id*. at col.40 ll.57–59 (emphasis added). And the patent describes embodiments in which the frame includes a circuit board. *See, e.g.*, *id*. at col.8 ll.22–24 ("The panel or frame may be relatively lightweight, and may include one or more circuit boards for direct mounting of the lamp elements."); col.11 ll.26–32 ("A corresponding lighting frame portion 1592 (e.g., printed circuit board), as shown in FIG. 15C, may be adapted to fit securely to the lighting frame portion 1502 (e.g., injected molded poly-carbonate), and may attach thereto by, for example, exterior locking tabs 1564 and/or interior locking tabs 1567, which are shown in FIGS. 15A and 15B."); col.24 ll.36–38 ("The interior lighting frame portion may advantageously comprise a printed circuit board.").

Finally, while the Court understands that the recited "frame" serves as a support structure for other structures and is not limited to any shape, the Court declines to adopt Plaintiffs' proposed construction as generally unhelpful to the jury.

Accordingly, the Court construes "frame" as follows:

- "frame" means "supporting structure."

**B.** **"frame having a front," "light elements disposed on the front of the frame," "portable frame having a front," and "light elements disposed on the front surface of the frame"**

| Disputed Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "frame having a front"<br><br>• '022 Patent Claims 1, 50 | frame having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted[5] | frame having a surface of the enclosure nearest the subject matter of the illumination |

---

[5] The Court presents its understanding of Plaintiffs' proposed construction listed in the P.R. 4-5(d) chart: "frame" + ordinary meaning for "having a front"; the ordinary meaning for "having a front"

| Disputed Term | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "light elements disposed on the front of the frame"<br><br>• '022 Patent Claim 1 | semiconductor light elements mounted on the frame having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted[6] | semiconductor light elements mounted on the surface of the enclosure closest to the subject matter of the illumination |
| "portable frame having a front"<br><br>• '022 Patent Claim 50 | portable frame having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted[7] | frame having a surface of the enclosure closest to the subject matter of the illumination |
| "light elements disposed on the front surface of the frame"<br><br>• '022 Patent Claim 50 | semiconductor light elements mounted on the frame having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted[8] | semiconductor light elements mounted on the surface of the enclosure closest to the subject matter of the illumination |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

---

should be defined as "having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted." Dkt. No. 54-1 at 1–2, 3–4.

[6] The Court presents its understanding of Plaintiffs' proposed construction listed in the P.R. 4-5(d) chart: "semiconductor light elements mounted on" + ordinary meaning for "the front" + "frame"; "the front" should be defined as "having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted." Dkt. No. 54-1 at 2.

[7] The Court presents its understanding of Plaintiffs' proposed construction listed in the P.R. 4-5(d) chart: Ordinary meaning for "portable" + "frame" + ordinary meaning for "having a front"; the ordinary meaning for "having a front" should be defined as "having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted." Dkt. No. 54-1 at 4–5.

[8] The Court presents its understanding of Plaintiffs' proposed construction listed in the P.R. 4-5(d) chart: "semiconductor light elements mounted on" + ordinary meaning for "the front surface" + "frame"; "the front surface" should be defined as "having more than one side and that one of these sides, the front, can be distinguished as the side from which light is emitted." Dkt. No. 54-1 at 5.

**The Parties' Positions**

Plaintiffs submit: As apparent from the various described embodiments, the front of the frame is the "side facing to the subject of illumination." As described, lights are mounted at various points on the front of a frame and are not necessarily on the surface that is nearest the subject of the illumination. Dkt. No. 49 at 9–10; Dkt. No. 53 at 3–7.

In addition to the claims themselves, Plaintiffs cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '022 Patent col.37 l.64 – col.38 l.3. **Extrinsic evidence**: Wood Decl. ¶¶ 36, 41 (Plaintiffs' Ex. B, Dkt. No. 43-2).

Defendant submits: As consistently described in the '022 Patent, the lighting elements are mounted on the frame surface that is nearest the subject being illuminated. Thus, the "front" of the frame recited in the claims is the surface of the frame that is nearest the subject being illuminated. Dkt. No. 42 at 27–30; Dkt. No. 52 at 4–6.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '022 Patent figs.5, 47A, 47B, 50A, col.10 ll.28–34.

**Analysis**

The issues in dispute distill to whether the "front" of the frame is necessarily the surface that it nearest the subject of the illumination. It is not. At the hearing, the parties agreed to the Court's construction below.

The front of the frame is the side of the frame from which the light is emitted (to illuminate), but it is not necessarily limited to the surface that is nearest the subject of illumination. For instance, the '022 Patent describes that the portion of the frame on which the light elements are mounted may have multiple levels:

> Certain embodiments have been described with respect to the placement of lamp elements (e.g., LEDs) on a "mounting surface" or similar surface or area. It will be

> appreciated that the term "mounting surface" and other such terms encompass not only flat surfaces but also contoured, tiered, or multi-level surfaces. Further, the term covers surfaces which allow the lamp elements to project light at different angles.

'022 Patent col.37 l.64 – col.38 l.3. This indicates that the frame portion on which the light elements are mounted may, when the light is directed at a subject, have some sections that are closer to the subject than others. Defendant's proposed construction would improperly limit the mounting surface to only a portion of the surface on which the light elements are mounted.

Further, with reference to Figures 32 and 47A–47B (reproduced and annotated below), the patent describes an embodiment in which the light elements are mounted on a recessed portion of the front side of the frame. Figures 47A and 47B are front and side views, respectively, of an exemplary lighting apparatus. Light elements 4705 are mounted on one side of the frame 4702 and heat dissipating fins 4712 are mounted on the other side. The fins 4712 may be "integrated on the back side of the panel 4702." As shown in Figure 47B, the light elements 4705 do not protrude from the frontmost surface of the frame. '022 Patent col.31 l.33 – col.32 l.28. One would expect



such a protrusion if the light elements were in fact mounted on the frontmost surface given that the patent describes the mounting may be "in accordance with the principles described previously with respect to FIG. 32" and Figure 32 depicts light elements 3202 that protrude from a mounting surface 3204. *Id*. at col.26 ll.57–61, col.31 ll.43–46.

Figure 48A (reproduced and annotated below) is a perspective view depicting a battery unit 4830 attached to the back side of a lighting apparatus 4802 "such as illustrated in FIGS. 47A–B." *Id*. at col.32 ll.29–37. "[T]he front side of the battery unit 4830 and backside of the panel 4802 may be provided with a mating male/female electrical plug and socket." *Id*. at col.32 ll.58–62. The profile of the light elements 4705 (mounted to surface 4804, which corresponds to surface 4704 in Figure 47A) can be seen in this view and the figure again suggests that the light elements would protrude from the frame if mounted on the frontmost surface of the frame. On balance, these embodiments indicate that the light elements are mounted on a recessed portion of the front side of the frame. These embodiments would improperly be excluded from the scope of the claims under Defendant's proposed construction of "front."



Accordingly, the Court resolves the disputes over these terms by construing "front" as follows:

- "front" means "side from which light is emitted."

## V. CONCLUSION

The Court adopts the constructions above for the disputed and agreed terms of the '022 Patent. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 21st day of July, 2021.**

*[Signature: Roy S. Payne]*
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE